**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 06-21286-CIV-LENARD/TORRES

RICHARD BAUER,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

**REPORT AND RECOMMENDATION ON PETITIONER'S MOTION
UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY**

Petitioner Richard Bauer, a prisoner in federal custody, filed this petition for writ of habeas corpus to set aside, vacate or correct his sentence pursuant to 28 U.S.C § 2255 [*Civil* D.E. 1], attacking the affirmation of his convictions on Counts 1, 2, 3 and 4 in Case No. 02-cr-20061-JAL [*Criminal* D.E. 50] and the sentence imposed upon him of seventy months for the four count indictment to be served concurrently entered on January 12, 2004 [*Criminal* D.E. 77].  The convictions were affirmed on direct appeal by the United States Court of Appeals For the Eleventh Circuit entered on April 4, 2005. [*Criminal* D.E. 82].

This cause has been referred to the undersigned pursuant to 28 U.S.C § 636 and S.D. Fla. Mag.J. R. 4(b) by the Honorable Joan. A. Lenard[1] in Case No. 06-21286-CIV-

---

[1] The general rule is that a collateral attack upon a sentence must be brought through § 2255 in the Federal District Court that sentenced petitioner.  *Birdsell v. Alabama*, 834 F.2d 920, 922 (11th Cir. 1987).  The Honorable Norman Roettger had presided over the trial, but upon his untimely passing the case was transferred to Judge Lenard for sentencing.

LENARD/TORRES. [*Civil* D.E. 3]. For its consideration of the habeas petition, the court has before it the Respondent's answer to the petition [*Civil* D.E. 6], Petitioner's reply to answer [*Civil* D.E. 8], and Petitioner's corrected reply [*Civil* D.E. 9]. For the reasons that follow, the Motion should be Denied.

## I.   PROCEDURAL HISTORY

On January 24, 2002, Petitioner was indicted by a federal grand jury on four-counts charging petitioner for conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count 1), and three substantive charges of money laundering in violation of 18 U.S.C. §§ 1956(a)(3)(B) and 2 (Counts 2-4). [*Civil* D.E. 2 at 4]. Petitioner was sentenced to serve seventy months as to all Counts to run concurrently, three years of supervised release, a total assessment of $400 and a criminal penalty of $15,000. [*Criminal* D.E. 77].

Petitioner appealed his convictions to the United States Court of Appeals For the Eleventh Circuit claiming his right to a fair trial was violated when the district court (1) refused to allow him to present an entrapment defense, and (2) failed to instruct the jury on entrapment. [*Criminal* D.E. 82 at 2]. The Eleventh Circuit affirmed Petitioner's convictions on April 4, 2005. *Id.*

Petitioner initiated the present action by filing a 28 U.S.C. § 2255 habeas petition on May 22, 2006, alleging ineffective assistance of counsel and due process of law on his then defense counsel's failure to raise a challenge under the Due Process Clause of the Fifth Amendment to the United States Constitution that protects against intentional and prejudicial preaccusation delay (ground 1); ineffective assistance of counsel and due process of law based on his then defense counsel's failure to object at sentencing or preserve and raise on appeal the issues then under consideration and subsequently

resolved by The United States Supreme Court in *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005) (ground 2); and fundamental sentencing error by the enhancement of his sentence based upon factors not charged by the indictment and thus contrary to The United States Supreme Court's decision in *Booker* (ground 3). [*Civil* D.E. 1 at 4, 14, 19].

In response to an order to show cause, Respondent asserts that all claims asserted by Petitioner are without merit. [*Civil* D.E. 6]. Petitioner filed his response to Respondent's answer on September 8, 2006 [*Civil* D.E. 8] and his corrected reply[2] on September 11, 2006 [*Civil* D.E. 9]. The matter is now ripe for disposition.

## II.   BACKGROUND[3]

This case arose out of an undercover investigation by the F.B.I. targeted at health care fraud and money laundering activities in Miami called "Medweb". The F.B.I. set up a fake medical supply company called PDR Medical and subsequently purchased a legitimate home health care company called Perfect Nursing. Thelma Rubal, one of the employees of Perfecting Nursing, stayed with the company after it had been acquired by the F.B.I. and was unaware of the undercover investigation. Both businesses operated out of a Miami storefront. The F.B.I. set up audio and video surveillance in both the reception and conference areas. F.B.I. Special Agent Conyngham played the role of receptionist and Jose Luis Zayas, a convicted felon and cooperating witness, played the

---

[2]    After the September 8, 2006 filing of Petitioner's Reply, defense counsel discovered that the filed original and one copy were missing page 11 due to a copy machine malfunction. As a result, the Corrected Reply was filed with page 11 and with three typographical errors corrected which were noted after the initial filing of the Reply.

[3]    The facts are taken from the Brief for the United States, filed in the Eleventh Circuit on April 6, 2004, unless otherwise indicated.

3

role of a drug dealer seeking to launder his money through his companies, PDR and Perfect Nursing.

In August 1996 Thelma Rubal and her husband, Pepe Rubal (both targets of the investigation), were approached by Zayas about meeting Bernando Bareneche[4] suggesting that he could help Zayas launder his drug money. Between August and September there were several telephone calls aimed at organizing a meeting between Zayas and Bareneche. On October 16, 1996, Barenche met with Pepe Rubal and Zayas at Perfect Nursing and explained that he was working with Bauer who would be willing to exchange cash for checks from his businesses (Bauer operated several companies selling refurbished medical equipment). Bareneche and Zayas agreed on a 15% fee for laundering the money which would be divided between Bauer, Bareneche and Pepe Rubal.

Thereafter, on January 27, 1997, February 18, 1997, and May 6, 1997, Bauer traveled to Miami to meet with Zayas, the Rubals, and Bareneche, wherein the exchange of Zayas' cash ($250,000) for checks from Bauer's corporate accounts occurred. [Civil D.E. 2 at 5]. These meetings were videotaped and showed Bauer explaining to Zayas the importance of Perfecting Nursing and PDR providing Bauer with invoices to help portray an aura of legitimacy in the transactions. No further meetings took place after May 6, 1997.

On January 24, 2002, a federal grand jury returned a four count indictment charging Bauer with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count 1), and three counts of money laundering in violation of 18 U.S.C. § 1956(a)(3)(B) and 2 (Counts 2-4). [*Civil* D.E. 2 at 4]. In the interim, between 1997 and

---

[4] Bareneche was formerly married to Bauer's wife's cousin. [*Criminal* D.E. 82 at 5].

2002, Zayas died in March 2000 and the Rubals died in 1998 and 1999.  The government filed a Motion In Limine To Preclude Reference To Criminal History of Cooperating Witness, granted by Judge Roettger, that prevented Bauer from introducing Zayas's previous convictions as evidence to the jury for impeachment purposes. [*Civil* D.E. 2 at 7].

Bauer was convicted on all four counts as charged.  At sentencing, the government filed an objection to the Presentence Investigation Report (PSI) requesting a two level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. [*Civil* D.E. 2 at 14]. Judge Lenard determined the increase was warranted, thereby increasing Bauer's offense level from 25 to 27.  *Id.*  Bauer was sentenced to imprisonment for a term of seventy months as to each of Counts 1 through 4 to run concurrently.  *Id.* at 15.

Bauer filed a direct appeal to the United States Court of Appeals for the Eleventh Circuit contesting the District Court's denial to (1) present an entrapment defense, and (2) failure to instruct the jury on entrapment.  Bauer further contended that the government exploited a family connection to induce him into illegal acts. [*Criminal* D.E. 82 at 2].  The Eleventh Circuit affirmed.

### III.    ANALYSIS

#### A.    *Statute of Limitations*

Title 28 U.S.C. § 2255 sets forth a one year statute of limitations for habeas petitions.[5]  The present case is subject to a one-year limitation that begins to run from

---

[5]    28 U.S.C. § 2255 provides "[a] 1-year period of limitation shall apply to a motion under this section.  The limitation shall period shall run from the latest of–
(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

"the date on which the judgment of conviction becomes final". *Id.* A judgment becomes "final" on the date the Supreme Court either affirms a petitioner's conviction or denies a petition for certiorari. *Clay v. United States*, 537 U.S. 522, 525 (2003). If no certiorari petition is filed, the judgment becomes final when the period for filing a petition for certiorari (90 days) expires. Sup. Ct. R. 13(1). Petitioner did not file a petition for certiorari after the Eleventh Circuit affirmed his convictions by judgment and opinion entered on February 24, 2005. Thus, Petitioner's judgment became final 90-days after the Eleventh Circuit affirmed his convictions, May 25, 2005. Accordingly, Petitioner's one-year period of limitation for which to file his § 2255 action expired on May 25, 2006. Petitioner filed his Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody on May 22, 2006. Therefore, Petitioner's motion is not time barred and is properly before the Court.

      **B.** ***Petitioner's Claim of Ineffective Assistance of Counsel for Defense Counsel's Failure to Move to Dismiss the Indictment Based on Pre-Indictment Delay***

Petitioner asserts that he was denied effective assistance of counsel because his then defense counsel failed to move to dismiss the claims against him based on the Due Process Clause of the Fifth Amendment to the United States Constitution. [*Civil* D.E. 2 at 4]. To succeed on a claim of ineffective assistance of counsel, Petitioner "must demonstrate (1) that his attorney's conduct fell below an objective standard of reasonable professional assistance and (2) but for counsel's errors, there is a reasonable probability

---

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

that the result of the proceeding would have been different." *United States v. Bartholomew*, 974 F.2d 39, 41-42 (11th Cir. 1992); *Strickland v. Washington*, 466 U.S. 668 (1984).

Petitioner was indicted on four counts by a federal grand jury on January 24, 2002, stemming from crimes allegedly committed as late as May 6, 1997. [Civil D.E. 2 at 6]. Thus, Petitioner was indicted approximately four years and eight months before the tolling of the applicable statute of limitations would have expired pursuant to 18 U.S.C. § 3282.[6]

Statutes of limitations are "'the primary guarantee against bringing overly stale criminal charges'. . . These statutes provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." *United States v. Marion*, 404 U.S. 307, 322 (1971) (quoting *United States v. Ewell*, 383 U.S. 116, 122 (1966)); *see Stoner v. Graddick*, 751 F.2d 1535, 1540 (11th Cir. 1985) ("When the statute of limitations is constitutional, the Constitution places a very heavy burden on a defendant to show that pre-indictment delay has offended due process.").

Prosecutors do not have a constitutional duty to files charges as soon as probable cause exists. *United States v. Lovasco*, 431 U.S. 783, 791 (1977). There exist good reasons for why prosecutors and law enforcement officers do not seek indictments immediately upon establishing probable cause, due in part to the need to strengthen their case against the defendant before a jury. *United States v. Watson*, 423 U.S. 411, 431

---

[6] 18 U.S.C. § 3282(a) provides that in a non-capital offense "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."

7

(1976) (Powell, J., concurring). Furthermore, filing charges immediately against defendants upon obtaining probable cause is undesirable from many standpoints: the defendant's liberty is obstructed and it would increase the time during which he would stand accused but untried; law enforcement officials could suffer because it could make obtaining proof of guilt beyond a reasonable doubt substantially more difficult by causing potential sources of information to evaporate; and the courts would be required to consume scarce resources on cases that may prove to be insubstantial. *Lovasco*, 431 U.S. at 791-92.

However, the Fifth Amendment's Due Process Clause may be violated even if an indictment is brought within the prescribed statute of limitations. *Id.* at 789-90; *Marion*, 404 U.S. at 324; *United States v. Gouveia*, 467 U.S. 180, 192 (1984). This occurs when a defendant can show that the government's pre-indictment delay "was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense." *Id.*; *see United States v. Thomas*, 62 F.3d 1332, 1339 (11th Cir. 1995) ("To prove a due process violation resulting from a pre-indictment delay, the [petitioner] must show: (1) actual prejudice to their defense from the delay; and (2) that the delay resulted from a deliberate design by the government to gain a tactical advantage."); *United States v. Hayes*, 40 F.3d 362, 365 (11th Cir. 1994) ("In this circuit, the defendant must show that he suffered substantial prejudice and that the delay was the product of deliberate action by the government to gain tactical advantage.").

The first prong of the Eleventh Circuit's test requires Petitioner to demonstrate actual prejudice. *Id.* at 1340; *Lovasco*, 431 U.S. at 790. At trial, Petitioner contended that several exculpatory conversations had taken place by telephone outside of the video surveillance areas concerning the legitimate sale of used medical equipment to Zayas.

8

[*Civil* D.E. 2 at 6]. Because Zayas and the Rubals were deceased at the time of trial, they were unavailable to support Petitioner's position regarding the non-taped conversations. *Id.* Petitioner also contends that he was unable to present at trial Zayas's previous felony convictions because Judge Roettger granted the government's Motion In Limine To Preclude Reference To Criminal History of Cooperating Witness.[7]  *Id.* at 7.

However, Petitioner had available for trial one live witness, Bareneche, who could have testified on his behalf regarding the exculpatory conversations. *Id.* Moreover, Petitioner made the unilateral determination that Bareneche was unavailable to testify at trial.[8]  *Id.* It is ironic that Petitioner attacks the government's pre-indictment delay in part because of the death of three witnesses who could corroborate Petitioner's "exculpatory evidence," while the one witness who was still alive and could have testified as to the unrecorded conversations was "unavailable" at trial. This is especially troubling where Petitioner failed to provide any credible evidence to support Bareneche's unavailability. *See Stoner*, 751 F.2d at 1545 (Court found no prejudice to defense where defendant failed to provide any evidence at trial to show why witness was unavailable to testify).

Nonetheless, the thrust of Petitioner's defense at trial was that he was involved in a legitimate sale with Zayas for used medical equipment. [*Civil* D.E. 9 at 3-4]. The trial

---

[7]  Zayas had two prior felony convictions: he was convicted in 1972 for violating federal narcotics laws and he was convicted in 1986 for a parole violation. Zayas was released from prison in 1990. Pursuant to Fed. R. Evid. 609(b), the government moved to prevent the introduction of Zayas's convictions because he was released more than ten years earlier and, thus, the convictions were not admissible as a method to impeach the witness.

[8]  "Upon information and belief" Petitioner determined that Bareneche was unavailable to testify for health reasons. [*Civil* D.E. 2 at 6].

record demonstrates Petitioner had the opportunity to introduce evidence at trial, if believed by the jury, that Petitioner and Zayas were involved in a legitimate business transaction. For example, Thomas Wilson testified that Petitioner had in the past purchased used medical equipment at auction, the equipment was purchased with cash in the thousands of dollars, and Petitioner maintained a business location which included storage of the equipment he would sell. [*Criminal* D.E. 67 at 404-07]. Further, Mr. Wilson testified that Petitioner made deals to sell an operating table and a sterilizer for cash and was preparing these items for shipment. *Id.* at 408-09.

Jonathon Wilde, Petitioner's former employee, testified that he recalled a transaction around 1997 involving an operating table that had been purchased at auction and that he had performed work refurbishing a sterilizer. *Id.* at 417-21. Petitioner's wife, Patricia Bauer, introduced into evidence invoices and bills of lading reflecting the sale of an operating table, hospital beds, and sterilizer to PDR during the relevant time frame in 1997. *Id.* at 439-57.

Therefore, it is reasonable to conclude that Zayas's testimony would have been cumulative given the testimony presented by Mr. Wilson, Mr. Wilde, and Mrs. Bauer. *See United States v. Benson*, 846 F.2d 1338, 1342 (11th Cir. 1988) (pre-indictment delay did "not rise to constitutional proportions" when other witnesses could provide similar testimony as lost witness); *United States v. Davis*, 487 F.2d 112, 117 (5th Cir. 1973) (testimony of lost witness would only be cumulative considering similar testimony presented by other witnesses).

Further, the trial record reflects that PDR, not Petitioner, was engaging in the sale of medical equipment at a meeting held in PDR's offices on January 27, 1997, which was recorded on videotape without Petitioner's knowledge. [*Criminal* D.E. 65 at 241-49]. In

10

this meeting, PDR (through Zayas) delivered to Petitioner approximately $50,000, made to resemble "drug money", in exchange for three checks payable to PDR from Petitioner in the amount of $42,500, the original $50,000 minus Petitioner's 15% fee for conducting the transaction. *Id.* Two more phone calls took place involving Zayas and Petitioner between January 27 and February 18, 1997. *Id.* at 249. The phone calls concerned the overnight delivery of a fourth check to PDR because one of the checks issued by Petitioner on the January 27 meeting was returned for insufficient funds. *Id.* at 251-52. At a third meeting on May 6, 1997, Petitioner again was presented with cash and invoices prepared by PDR, worth approximately $100,000, and Petitioner wrote several checks in exchange. [*Criminal* D.E. 66 at 278-82]. Thus, throughout the recorded meetings and conversations where cash and checks were exchanged, Petitioner was dealing directly with Zayas.

Petitioner further asserts that he was substantially prejudiced as a result of the pre-indictment delay because he was unable to impeach Zayas through the use of his previous convictions as permitted by Fed. R. Evid. 609. [*Civil* D.E. 2 at 7]. However, testimony was elicited from the prosecution's witness, Special Agent Conyngham, during cross-examination by defense counsel that two of the co-conspirators involved (Pepe Rubal and Bernardo Bareneche) had previously been incarcerated. [*Criminal* D.E. 66 at 293-94]. Moreover, Zayas was recorded on tape as stating that he had served approximately fifteen years in prison, which was confirmed by Special Agent Conyngham, in spite of Judge Roettger's order granting the prosecution's motion in limine. *Id.* at 293, 306. Therefore, although indirectly, the jury was presented with evidence tending to demonstrate that all parties involved had previous criminal records.

Thus, the jury had before them two plausible explanations as to the extent of the transactions that had taken place between Petitioner and PDR: the prosecution had their

11

opportunity to represent the transactions as a conspiracy to launder money and as substantive money laundering, and Petitioner had his opportunity to present evidence, which if believed, demonstrated a legitimate transaction for the sale of medical equipment.  The absent testimony of Zayas or the Rubals could have affected both the prosecution and the defense in the presentation of their case.  See *Davis*, 487 F.2d at 119 ("[A]ll practiced trial lawyers are well aware that the attrition from [pre-indictment] delay is more damaging to the prosecution's case than that to the defense.  This will be so as long as the prosecution has the burden of proof.") (quoting *United States v. Judice*, 457 F.2d 414, 418 (5th Cir. 1972)).

Accordingly, in light of the evidence introduced at trial and Petitioner's failure to present credible evidence demonstrating Bareneche's unavailability, Petitioner has failed to meet his burden of demonstrating actual prejudice as a result of the pre-indictment delay.  See *Lovasco,* 431 U.S. at 797 (death of two witnesses did not offend defendant's due process rights even if his defense might have been somewhat prejudiced by the lapse of time); *United States v. Butler*, 792 F.2d 1528, 1533 (11th Cir. 1986) (speculative, general allegations of lost witnesses "are insufficient to demonstrate the actual prejudice required") (quoting *United States v. Radue,* 707 F.2d 493, 495 (11th Cir. 1983)); *United States v. Russo,* 796 F.2d 1443, 1451 (11th Cir. 1986) (general allegations of lost witnesses "are not sufficient to constitute proof of substantial prejudice."); *Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir. 1984) (two-pronged standard for demonstrating pre-indictment delay offending due process is "an exceedingly high [burden]").

Having failed to satisfy the actual prejudice prong of *Strickland*, there is no need for the Court to reach the intentional delay prong.  *Strickland*, 466 U.S. at 697; *Waters v.*

*Thomas*, 46 F.3d 1056, 1510 (11th Cir. 1995).[9]  Consequently, Petitioner's first ground for relief under 28 U.S.C § 2255 is unavailing and therefore fails.

### C. *Petitioner's Claim of Ineffective Assistance of Counsel for Defense Counsel's Failure to Raise an Apprendi Issue at Sentencing*

As his second claim under § 2255, Petitioner asserts that he was denied effective assistance of counsel because his then defense counsel did not object at sentencing or raise on appeal to Judge Lenard's two level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 because of the belief that Petitioner perjured himself at trial. [*Civil* D.E. 2 at 14]. Petitioner contends counsel's failure to object to the enhanced sentence imposed on facts not found by the jury was objectionable and improper based upon the Fifth and Sixth Amendments to the United States Constitution. *Id.* at 15. Further, Petitioner's counsel failed to raise the issue on appeal. *Id.* Thus, Petitioner posits, under the Supreme Court decisions in both *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005), the sentence enhancement imposed upon him unilaterally by Judge Lenard is fundamental error.

Petitioner was sentenced on January 8, 2004, before the *Blakely/Booker* decisions were rendered. [*Civil* D.E. 2 at 14]. But even though *Blakely* and *Booker* had not been decided when Petitioner was sentenced, the Supreme Court had announced in *Apprendi v. New Jersey* that any fact which increased the statutory maximum of an offense must be charged in the indictment and proved beyond a reasonable doubt. 530 U.S. 466, 490

---

[9] *Cf.United States v. Lamb*, No. 06-1156, 2007 U.S. App. Lexis 1087, at *9-10 (11th Cir. Jan. 18, 2007) (where court determined that Petitioner had failed to demonstrate government's pre-indictment delay was an intentional act to gain a tactical advantage, a determination of whether the delay caused actual substantial prejudice to Petitioner was not needed); *United States v. Thomas*, 62 F.3d 1332, 1340 (11th Cir. 1995) (petitioners' due process challenge failed because they did not meet their burden of showing pre-indictment delay was an intentional act to gain a tactical advantage).

(2000). However, the Eleventh Circuit had held, at that time, the Sentencing Guidelines were not subject to the *Apprendi* rule. *See United States v. Diaz*, 248 F.3d 1065, 1105 (11th Cir. 2001) ("Sentencing Guideline issues are not subject to the *Apprendi* rule and, thus, there is no requirement that sentencing facts be submitted to the jury and found beyond a reasonable doubt."); *United States v. Harris*, 244 F.3d 828, 830 (11th Cir. 2001) ("*Apprendi* does not apply to the Sentencing Guidelines."); *United States v. Nealy*, 232 F.3d 825, 829 n.3 (11th Cir. 2000) ("The Sentencing Guidelines are not subject to the *Apprendi* rule.").

Therefore, as the Eleventh Circuit has conclusively held, it is not ineffective assistance of counsel for an attorney to fail to foresee a change in the law. *Wright v. Hopper*, 169 F.3d 695, 707-08 (11th Cir. 1999); *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) ("We have held many times that '[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.'"). Petitioner has failed to satisfy the prejudice prong of *Strickland* and, thus, his second ground for seeking relief fails. *See United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001) ("In this circuit, we have a wall of binding precedent which shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel.").

### D.  *Petitioner's Claim of Fundamental Error in Sentencing*

Petitioner asserts that Booker should be applied retroactively by way of collateral attack through a § 2255 motion claiming that the sentence imposed was unlawfully enhanced by facts not found by the jury. [*Civil* D.E. 2 at 19]. However, Petitioner is not entitled to relief on this claim as the Eleventh Circuit has held that *Blakely* and *Booker* do not apply retroactively to § 2255 cases on collateral review. *See Varela v. United States*,

400 F.3d 864, 867 (11th Cir. 2005) (The Supreme Court's recent decision in *Schriro v. Summerline*, 542 U.S. 348 (2004), held that "the new requirement in *Ring v. Arizona*, 536 U.S. 584 (2002), which like *Blakely* and *Booker*, is an application of *Apprendi's* principles, does not apply retroactively to cases on collateral review.").

Nonetheless, even taking into consideration this binding precedent, Petitioner argues that he is entitled to relief based on the Supreme Court's grant for a writ of certiorari in *Burton v. Waddington*, 126 S. Ct. 2352 (2006). [*Civil* D.E. 9 at 11]. In essence, Petitioner posits that implicit in the Supreme Court's grant for the writ of certiorari is the notion that the Supreme Court will hold the *Blakely/Booker* decision as an exception to the retroactivity rule that bars new constitutional rules from applying retroactively to cases on collateral review. *Id.* The basis for the exception is derived from the Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288 (1989). *Teague* recognized that there are certain circumstances that warrant exceptions to the retroactivity rule for cases on collateral review. *Id.* at 310. One of these circumstances encompasses "watershed" rules of criminal procedure that are so fundamental to the accuracy and essential fairness of the criminal process that they should be applied retroactively. *Id.* at 311. However, the Court in *Teague* also held that:

> [I]mplicit in the retroactivity approach we adopt today, is the principle that habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to *all* defendants on collateral review through one of the two exceptions we have articulated.

*Id.* at 316 (emphasis in original).

In *Schriro* the Supreme Court had the opportunity to determine whether a new constitutional rule should be applied retroactively to a case already final on direct review where a trial judge enhanced a defendant's sentence based on aggravating factors found

15

by the judge, rather than by the jury. 542 U.S. at 350-51. The defendant's conviction and sentence had become final and was affirmed on direct review by the Arizona Supreme Court. *Id.* at 350. Subsequently, the U.S. Supreme Court concluded in *Ring,* while the defendant's federal habeas petition was pending before the Ninth Circuit Court of Appeals, that *Apprendi* required the existence of an aggravating factor to a sentence to be proved to a jury rather than to a judge. *Id.* at 351. The Ninth Circuit, based on the new rule announced in *Ring,* applied it retroactively in defendant's favor. *Id.* 352-53. The Supreme Court reversed, holding that the new procedural rule announced in *Ring* did not apply retroactively to cases already final on direct review. *Id.* at 358. Therefore, if in *Schriro* the Supreme Court determined that a new rule does not apply retroactively in a case where an aggravating factor necessary to warrant the death penalty was determined by the judge and not by the jury, Judge Lenard's two-step enhancement of Petitioner's sentence can hardly be seen as fundamental sentencing error warranting a modification based upon the retroactivity of the *Apprendi/Blakely/Booker* principles.

Furthermore, the issue presented in *Burton* is quite distinguishable from Petitioner's case. Burton was convicted by a jury in 1994 of rape in the first degree, robbery in the first degree, and burglary in the first degree. *Burton v. Waddington*, No. 03-35095, 2005 U.S. App. LEXIS 15497, at *298 (9th Cir. July 28, 2005). Burton was sentenced to consecutive terms of 304 months for the rape, 153 months for the robbery, and 105 months for the burglary, for a total of 562 months. *Id.* On appeal to the Ninth Circuit, *Burton* challenged his sentencing under *Apprendi* principles as a violation of Sixth Amendment rights. *Id.* at *299. The Ninth Circuit held that *Apprendi* did not apply because the total term of his sentence, 562 months, did not exceed the statutory

16

maximum allowed for any one of the individual offenses (the statutory maximum for each offense in Burnton's case was life imprisonment). *Id.* at *299-300.

Had Judge Lenard not granted the two level enhancement for obstruction of justice, Petitioner's total offense level would have been 25. [PSI at 9]. Petitioner had zero criminal history points thus placing him in a criminal history category of I. *Id.* Therefore, without the two level enhancement Petitioner's imprisonment range would have been between 57 to 71 months. 18 U.S.C.S Appx. § 5A. Thus, Petitioner's sentence to serve seventy months imprisonment on all four Counts to run concurrently is readily distinguishable from the *Apprendi* sentencing issue in *Burton* because (1) Petitioner's sentence even after receiving the two level enhancement is within the imprisonment range if he had not received the enhancement, and (2) whereas in *Burton* the terms for imprisonment for each offense were to run consecutively, Petitioner's imprisonment terms for each offense are to run concurrently.

Moreover, what Petitioner seeks is for the Court to somehow gaze into a crystal ball to determine the outcome of *Burton* pending before the Supreme Court. It is not the role of the Court to hypothesize the merits of a particular case pending before the Supreme Court, especially when the law in the Eleventh Circuit is well settled as to the claim presented. *Cf. Teague*, 489 U.S. at 296 ("[T]he 'denial of a writ of certiorari imports no expression of opinion upon the merits of the case.'") (quoting *United States v. Carver*, 260 U.S. 482, 490 (1923)); *see Varela*, 400 F.3d at 868 ("[A]s the Supreme Court concluded in *Schriro,* we conclude that *Booker*'s constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral review."); *Hicks v. United States,* No. 04-15051, 2005 U.S. App. LEXIS 18955, at *398 (11th Cir. Aug. 29, 2005) (The new rule announced in *Blakely* and *Booker* does not

17

apply retroactively to § 2255 cases on collateral review.); *Alcide v. United States*, No. 04-15643, 2005 U.S. App. LEXIS 14987, at *868 (11th Cir. July 21, 2005) ("Booker's new rule is not a 'watershed rule of criminal procedure' and does not apply retroactively to § 2255 cases on collateral review.").

### E.     *An Evidentiary Hearing Is Not Required*

Petitioner asserts that an evidentiary hearing is required to determine the merits of his claims. An evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief". 28 U.S.C. § 2255. Therefore, if Petitioner alleges facts that, if true, would entitle him to relief, then an evidentiary hearing is required to further develop the record. *Slicker v. Wainwright*, 809 F.2d 768, 770 (11th Cir. 1987).

However, an evidentiary hearing is not always required simply because the petitioner has brought forward a claim of ineffective assistance of counsel. *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989). Petitioner first contended that the pre-indictment delay resulted in actual prejudice to his defense. As stated above, the Court has already determined that Petitioner has failed to meet his burden. Therefore, it cannot be said "but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different." *Bartholomew*, 974 F.2d at 41-42. Thus, as to Petitioner's first claim of ineffective assistance of counsel for failing to raise a motion to dismiss based on pre-indictment delay, the Court determines that an evidentiary hearing is not required. *Id.* at 41.

Petitioner's second claim is that he suffered ineffective assistance of counsel because his then defense counsel failed to object at sentencing to an *Apprendi* issue on

Judge Lenard's granting of a two level enhancement for obstruction of justice. The Eleventh Circuit has conclusively foreclosed this issue as a matter of law:

> Because our circuit completely forecloses the contention that an attorney's failure to anticipate the *Apprendi* decision is ineffective assistance of counsel, district courts are not required to, and should not, hold an evidentiary hearing on that issue. There is no relevant evidence to hear. The issue is settled as a matter of law.

*Ardley,* 273 F.3d at 993. Therefore, Petitioner's second claim is unavailing and he is not entitled to an evidentiary hearing.

Petitioner's third claim is equally unremarkable. Bauer's convictions became final long before the *Blakely* decision. Until such time as the Supreme Court instructs, the new constitutional rule announced in *Blakely* and its progeny *Booker* of criminal procedure does not apply retroactively to § 2255 cases on collateral review. Consequently, there is no need to provide an evidentiary hearing on this matter and Petitioner is not entitled to relief on this claim. *See Garfield v. United States,* No. 04-10832, 2005 U.S. App. LEXIS 8647, at *680 (11th Cir. May 13, 2005); *Anderson v. United States*, 948 F.2d 704, 705 (11th Cir. 1991).

### IV.   CONCLUSION

It is hereby **RECOMMENDED** that Petitioner's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody [D.E. 1, 2] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have ten days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Joan A. Lenard, United States District Judge. *See* S.D. Fla. Local Mag. Rule 4. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on

appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 27th day of March 2007.

_____
EDWIN G. TORRES
United States Magistrate Judge

Copies provided to:
Honorable Joan A. Lenard