UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-21286-CIV-LENARD/GARBER
(RELATED CASE: 02-20061-CR-LENARD)

**RICHARD BAUER**,

       Petitioner,

vs.

**UNITED STATES OF AMERICA,**

       Respondent.
_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE (D.E. 10); DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE (D.E. 1); AND DISMISSING CASE**

**THIS CAUSE** is before the Court on the Report and Recommendation of Magistrate Judge Edwin G. Torres ("Report," D.E. 10), issued on March 27, 2007. In his Report, Magistrate Judge Torres thoroughly addresses Petitioner Richard Bauer's three grounds for relief set forth in his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Petition," D.E. 1), and recommends that the Court deny the Petition. Petitioner filed Objections to the Report on April 10, 2007 (D.E. 11). The Court has conducted a de novo review of the Petition, the Report, the Objections, and the record, and finds as follows:

**I.    Factual Background**[1]

This case arose out of an undercover investigation by the F.B.I. known as "Medweb"

---

[1] The facts recited infra are largely taken from the Report and are not objected to by Petitioner.

which targeted health care fraud and money laundering activities in Miami. Pursuant to the investigation, the F.B.I. set up a fake medical supply company called PDR Medical and purchased a legitimate home health care company called Perfect Nursing. Thelma Rubal, one of the employees of Perfect Nursing, stayed with the company after it had been acquired by the F.B.I. and was unaware of the undercover investigation. Both businesses operated out of a Miami storefront. The F.B.I. set up audio and video surveillance in both the reception and conference areas. F.B.I. Special Agent Conyngham played the role of receptionist and Jose Luis Zayas, a convicted felon and cooperating witness, played the role of a drug dealer seeking to launder his money through his companies, PDR and Perfect Nursing.

In August 1996 Thelma Rubal and her husband, Pepe Rubal (both targets of the investigation), approached Zayas and suggested that Bernando Bareneche could help Zayas launder his drug money. Bareneche was Petitioner's wife's cousin's former husband. Between August and September there were several telephone calls aimed at organizing a meeting between Zayas and Bareneche. On October 16, 1996, Barenche met with Pepe Rubal and Zayas at Perfect Nursing and explained that he was working with Petitioner who would be willing to exchange cash for checks from his businesses. Petitioner operated several companies selling refurbished medical equipment.

Thereafter, on January 27, 1997, February 18, 1997, and May 6, 1997, Petitioner traveled to Miami to meet with Zayas, the Rubals, and Bareneche, wherein the exchange of Zayas' cash ($250,000) for checks from Petitioner's corporate accounts occurred. [Civil D.E.

2

2 at 5]. These meetings were videotaped and showed Petitioner explaining to Zayas the importance of having Perfect Nursing and PDR provide Petitioner with invoices to help portray an aura of legitimacy in the transactions. No further meetings took place after May 6, 1997.

The Rubals died in 1998 and 1999. Zayas died in March 2000.

## II.     Procedural Background

On January 24, 2002, approximate four years and eight months after the last meeting between the Petitioner and his co-conspirators, Petitioner was indicted by a federal grand jury on four counts: one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count 1), and three substantive charges of money laundering in violation of 18 U.S.C. §§ 1956(a)(3)(B) and 2 (Counts 2-4). (D.E. 10 at 2.)

At trial, the government filed a Motion In Limine To Preclude Reference To Criminal History of Cooperating Witness, granted by Judge Roettger, that prevented Petitioner from introducing Zayas's previous convictions as evidence to the jury for impeachment purposes. (Id. at 5.)

Petitioner was convicted on all four counts as charged. (Id.) At sentencing, the government filed an objection to the Presentence Investigation Report (PSI) requesting a two level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. (Id.) The trial judge determined the increase was warranted, thereby increasing Bauer's offense level from 25 to 27. (Id.) Bauer was sentenced to imprisonment for a term of seventy months as to each

of Counts 1 through 4 to run concurrently, three years of supervised release, a total assessment of $400 and a criminal penalty of $15,000.  (Id.)

Petitioner appealed his convictions to the Eleventh Circuit claiming his right to a fair trial was violated when the district court (1) refused to allow him to present an entrapment defense, and (2) failed to instruct the jury on entrapment.  (Id.)  Bauer further contended that the government exploited a family connection to induce him into illegal acts.  The Eleventh Circuit affirmed Petitioner's convictions on April 4, 2005.  (Id.)

On May 22, 2006, Petitioner filed the instant Petition.  Therein, Petitioner presents three grounds for relief: ineffective assistance of counsel arising from his trial counsel's failure to raise a challenge under the Due Process Clause of the Fifth Amendment for intentional and prejudicial pre-indictment delay (Ground One); ineffective assistance of counsel and due process of law arising from his trial counsel's failure to object at sentencing or preserve and raise on appeal the issues then under consideration and subsequently resolved by the Supreme Court in Blakely v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 543 U.S. 220 (2005) (Ground Two); and fundamental sentencing error by the enhancement of his sentence based upon factors not charged by the indictment and thus contrary to the Supreme Court's decision in Booker (Ground Three).  (See D.E. 1 at 4, 14, 19.)

### III.    The Report

The Magistrate Judge found that all three grounds for relief asserted in the Petition

4

fail.

First, as to Petitioner's claim that his counsel was ineffective for failing to move to dismiss the indictment based on prejudicial and deliberate pre-indictment delay (Ground One), the Magistrate Judge found that Petitioner could not prove ineffective assistance of counsel[2] because he could not establish the first prong of the pre-indictment delay test. (See D.E. 10 at 12.)   To establish a due process violation based on pre-indictment delay, the defendant must show (1) that he suffered substantial prejudice and (2) that the delay was the product of deliberate action by the government to gain a tactical advantage. (Id. at 8.) The Magistrate Judge rejected Petitioner's alleged claims of prejudice.  Petitioner contends that several exculpatory conversations had taken place by telephone outside of the video surveillance areas concerning the legitimate sale of used medical equipment to Zayas, but because Zayas and the Rubals were deceased at the time of trial, they were unavailable to support Petitioner's contentions regarding the non-taped conversations. (Id. at 8-9.)   The Magistrate Judge found this argument invalid because Petitioner had available for trial one live witness, Bareneche, who could have testified on his behalf regarding the exculpatory conversations, but Petitioner made the unilateral determination that Bareneche was unavailable to testify at trial. (Id. at 9.)  Further, the Magistrate Judge found that Petitioner had the opportunity to introduce evidence at trial, if believed by the jury, that Petitioner and

---

[2]     In order to prove ineffective assistance of counsel, Petitioner needs to prove that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different.  See Strickland v. Washington, 466 U.S. 668 (1984).

5

Zayas were involved in a legitimate business transaction. (Id. at 10.)

The Magistrate Judge also rejected Petitioner's contention that that he was substantially prejudiced as a result of the pre-indictment delay because he was unable to impeach Zayas through the use of his previous convictions as permitted by Fed. R. Evid. 609. (Id. at 11.) The Magistrate Judge found that, although indirectly, the jury was presented with evidence demonstrating that all parties involved had previous criminal records. (Id.) As the Magistrate Judge found that Petitioner had failed to satisfy his "heavy burden" to establish actual prejudice, there was no need to reach the second prong of the inquiry, whether there was an intentional delay by the government. (Id. at 12.)

Second, as to Petitioner's claim that his counsel was ineffective for failing to raise an Apprendi issue at sentencing (Ground Two), the Magistrate Judge found that, at the time of sentencing, the Sentencing Guidelines were not subject to the rule in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), that any fact which increased the statutory maximum of an offense must be charged in the indictment and proved beyond a reasonable doubt. (D.E. 10 at 13-14.) As the Eleventh Circuit has conclusively held that it is not ineffective assistance of counsel for an attorney to fail to foresee a change in the law, the Magistrate Judge found that Petitioner's second claim fails. (Id. at 14.)

Third, as to Petitioner's claim that his sentence was unlawfully enhanced by facts not found by the jury pursuant Blakely v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 543 U.S. 220 (2005) (Ground Three), the Magistrate Judge found that Blakely and

6

Booker do not apply retroactively to § 2255 cases on collateral review. (D.E. 10 at 14.) Additionally, the Magistrate Judge rejected Petitioner's contention that the Supreme Court will hold the Blakely/Booker decision as an exception to the retroactivity rule that bars new constitutional rules from applying retroactively to cases on collateral review. (Id. at 15.)

Finally, the Magistrate rejected Petitioner's request for an evidentiary hearing. (See id. at 18-19.)

### IV. Objections

Petitioner makes extended objections to the Magistrate Judge's findings regarding his claim that his counsel was ineffective for failing to move to dismiss the indictment based on pre-indictment delay (Ground One). Petitioner argues that the government's delay deprived him of Zayas's testimony which would have been crucial to establish that Petitioner ran a legitimate business and was not conducting the subject transactions for money laundering purposes. (D.E. 11 at 7-8.) Petitioner also objects that the Report overlooks the real prejudice resulting from Petitioner's inability to directly introduce Zayas's convictions into evidence. (Id. at 8-9.) As to the Magistrate Judge's findings regarding the availability of Bareneche, Petitioner argues that the Magistrate Judge ignores the difficulty of procuring Bareneche for trial. (Id. at 10.) Petitioner also objects that the Magistrate Judge overestimates the practical effect that a "self serving" affidavit as to Barenche's unavailability would have had on his defense at trial. (Id. at 10.)

Petitioner further argues that, although the Magistrate Judge did not reach the second

7

prong of the pre-indictment delay, he is able to show that the delay was the product of a deliberate act by the government to gain a tactical advantage. (Id.) Petitioner contends that the government has been silent in the face of his claim that the delay between the alleged crime and the indictment could not have been for investigative purposes. (Id. at 11.) Further, the Petitioner argues that the government has failed to address its knowledge of Zayas's fatal illness and the length of time it knew about his illness. (Id. at 12.) That is, Petitioner contends that Zayas's death was entirely predictable to the government. (Id.) These objections are discussed in greater detail below.

Petitioner does not present any specific objections to his second and third grounds for relief - that counsel was ineffective for failing to raise an Apprendi issue at sentencing and that his sentence was unlawfully enhanced by facts not found by the jury. Instead, Petitioner "relies on his previously filed memoranda." (Id. at 2 n.1.)

Finally, Petitioner renews his request for an evidentiary hearing. (Id. at 12-13.)

**V.   Discussion**

    **A.   Ground One**

To prove a due process violation resulting from a pre-indictment delay, Petitioner must show: (1) actual prejudice to his defense from the delay; and (2) that the delay resulted from a deliberate design by the government to gain a tactical advantage. United States v. Thomas, 62 F.3d 1332, 1339 (11th Cir. 1995). It is Petitioner's burden to prove both prongs of the pre-indictment delay test and the standard for demonstrating a due process violation

8

is "exceedingly high." See Tiemens v. United States, 724 F.2d 928, 929 (11th Cir. 1984). Because Petitioner cannot establish either prong of the pre-indictment delay test, his claim in Ground One fails.

In his Objections, Petitioner makes four arguments in support of his contention that he suffered actual prejudice from the delay that deprived him of Zayas's testimony.  First, Petitioner contends that there were significant exculpatory conversations concerning the purchase of used medical equipment by Zayas that were not recorded on the government's surveillance equipment.  Petitioner argues, "As Zayas was not available for cross-examination (all to the benefit of the government), the only evidence that could then be presented to establish Mr. Bauer's defense at trial was the testimony of Mr. Bauer himself, thereby requiring a waiver of his rights under the Fifth Amendment."  (D.E. 11 at 7.) Petitioner further argues that Zayas would have had to acknowledge on the stand that he owned an import/export business dealing in used medical equipment, that his business was conducted without F.B.I. monitoring, that equipment was purchased from Petitioner and shipped to Zayas's business, that there were discussions between Zayas and Petition concerning these transactions, and that the records of these transactions existed.  (Id. at 7-8.) Petitioner also argues that Zayas would have had to produce and authenticate these business records and that the Rubals, also deceased, would have been able to corroborate these facts. (Id. at 8.)  Second, Petitioner argues that without Zayas's presence on the stand, it was impossible for him to adequately introduce Zayas's criminal history. Petitioner contends that

9

the "cursory" testimonial exchange between defense counsel and an F.B.I agent introduced Zayas's criminal history in "virtual vacuum." (Id. at 9.) Petitioner also argues that he was denied the benefit of cross-examination of the F.B.I. agents under Fed. R. Evid. 806. (Id.) Third, Petitioner contends that the Report erroneously states that testimony was elicited from a prosecution witness that two of Petitioner's co-conspirators, Pepe Rubal and Bareneche, had criminal records. (Id. at 9-10.) Fourth and finally, Petitioner contends that the Report erroneously penalizing him for not having information regarding Bareneche's availability at trial when Petitioner lacked subpoena power and an evidentiary hearing that would have provided him the opportunity to gather this information. (Id. at 10.) Further, Petitioner argues that if he had submitted an affidavit regarding Barenche's unavailability at trial, it would have been viewed as self-serving and of no evidentiary value. (Id.)

The Court agrees with the Magistrate Judge's finding that Petitioner did not suffer actual prejudice due to Zayas's unavailability as a witness. The essence of Petitioner's argument regarding Zayas's unavailability is that Zayas would have provided exculpatory testimony regarding Petitioner's legitimate business activities. However, the record demonstrates that Petitioner had the opportunity to and did introduce evidence at trial demonstrating that he was involved in a legitimate business. As the Magistrate Judge noted in the Report, Petitioner introduced evidence from at least three witnesses that Petitioner had purchased used medical equipment in the past, maintained a business location to store the equipment he had purchased, and made deals to sell this equipment. (See D.E. 10 at 10.)

Further, Petitioner's wife introduced into evidence invoices and bills of lading reflecting the Petitioner's sale of medical equipment during the relevant time period in 1997. (See id.) Thus, as stated by the Magistrate Judge, it is reasonable to conclude that Zayas's testimony would have been cumulative and, accordingly, Petitioner did not suffer actual prejudice.

The Court also finds that Petitioner cannot demonstrate actual prejudice because he has failed to demonstrate adequate justification for failing to call Barenche as a witness at trial. Bareneche was present during the allegedly exculpatory conversations that were not recorded by the government. Petitioner simply argues that, "Upon information and belief, it is Mr. Bauer's understanding that Bareneche's health and mental fitness was such that he could not have testified at the trial for either the government or the defense." (D.E. 2 at 6 n.6.) Petitioner cannot successfully argue that he was actually prejudiced by Zayas's absence without providing a convincing explanation for why another exculpatory witness could not have provided similar testimony. See Stoner v. Graddick, 751 F.2d 1535, 1545 (11th Cir. 1985) (finding that Petitioner "undermine[d]" his claim of actual prejudice when he failed to adequately explain why an allegedly exculpatory witness was unavailable to testify on his behalf at trial). Petitioner's weak contention regarding his "understanding" of Barenche's physical and mental fitness at the time of trial, made without any supporting evidence or affidavits, severely undermines his claim that he was prejudiced by Zayas's unavailability.

Finally, the Court agrees with the Magistrate Judge that Petitioner was not prejudiced by his inability to impeach Zayas through the use of his previous convictions. Zayas's

11

convictions and prison term were introduced into evidence. Petitioner's argument that this information was admitted in a "virtual vacuum" is completely speculative and ignores that the evidence accomplished exactly what Petitioner would have been able to do if he had introduced the evidence directly - impeach the credibility of Zayas.[3]

Even assuming that Petitioner could demonstrate actual prejudice to his defense from the delay, Petitioner does not satisfy his exceedingly high burden to demonstrate that the pre-indictment delay was a deliberate attempt by the government to gain a tactical advantage. In fact, Petitioner never affirmatively alleges that the government intentionally delayed the indictment against him in order to gain a tactical advantage. Instead, Petitioner contends that, "upon information and belief," Zayas was under the "care and control" of the DEA until his death from liver cancer and therefore Zayas's death was predictable to the government. (See D.E. 11 at 11.) Petitioner also contends that the government never denied his allegations that the delay was not for investigative purposes. (See id. at 12.) Baldly asserting that the government knew of Zayas's precarious health or that the government could have predicted his death is insufficient to establish that the government intentionally delayed the indictment to gain a tactical advantage.[4] Further, it is not the government's burden to

---

[3] The Court does not address Petitioner's argument that the Magistrate Judge erroneously concluded that evidence was presented at trial regarding Pepe Rubal and Bareneche's criminal history. This argument does not demonstrate actual prejudice resulting from Zayas's unavailability and is thus outside the scope of the argument presented in the Petition.

[4] Further, Petitioner was indicted approximately two years after Zayas's death. This fact would support an inference that the delay was unrelated to any alleged tactical advantage associated with Zayas's death and subsequent unavailability as a witness.

12

establish that the delay was for investigative purposes.[5] In any event, Petitioner falls far short of satisfying his "exceedingly high" burden of showing deliberate delay and therefore, even if he could demonstrate actual prejudice, his claim fails. See United States v. Foxman, 87 F.3d 1220, 1223 (11th Cir. 1996) ("[S]ubstantial prejudice from delay, standing alone, does not violate due process.").

### B. Grounds Two and Three

Petitioner does not specifically challenge any portion of the Report with regards to his second and third grounds for relief, but rather, makes objections based on his previously filed memoranda. (See D.E. 11 at 2 n.1.) It is incumbent upon the party filing objections to a Report and Recommendation to specifically identify those findings objected to and the specific basis for such objections. Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988). If an objection fails to identify the specific findings or a specific basis the district court need not consider it. Id. In spite of Petitioner's failure to make specific objections to the Report's findings as to Grounds Two and Three, the Court has independently reviewed the Report and record, and, for the reasons stated by the Magistrate Judge in the Report, finds that Petitioner is not entitled to relief on these claims.

### C. Evidentiary Hearing

Section 2255 provides that in an action to vacate or correct the sentence, the court

---

[5] As argued by the government in its Answer to the Petition: "While the case law is clear that an ongoing investigation may preclude a claim of unconstitutional pre-trail delay, this legal point does not support the converse inference that defense counsel would suggest - i.e., that a charging delay without investigational purpose is somehow unconstitutional." (D.E. 6 at 10.)

shall grant a hearing to determine the issues and make findings of fact and conclusions of law "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. That is, "[a] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting Guerra v. United States, 588 F.2d 519, 520 (5th Cir. 1979)). As Petitioner's only valid claim - that his counsel was ineffective for failing to move to dismiss the indictment based on pre-indictment delay - fails because Petitioner cannot demonstrate actual prejudice and because he makes unsupported generalizations regarding the government's allegedly intentional delay, the Court concurs with the Magistrate Judge that an evidentiary hearing is unnecessary.

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** that:

1. The Report of Magistrate Judge Edwin G. Torres (D.E. 10), issued on March 27, 2007, is **ADOPTED**.

2. The Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (D.E. 1), filed on or about May 22, 2006, is **DENIED**.

3. This case is **CLOSED**.

4. All pending motions not otherwise ruled upon are hereby **DENIED** as moot.

**DONE AND ORDERED** in Chambers at Miami, Florida this 24th day of June, 2008.

                                                    **JOAN A. LENARD**
                                                    **UNITED STATES DISTRICT JUDGE**

cc:     U.S. Magistrate Edwin G. Torres
         U.S. Magistrate Barry L. Garber
         Counsel of Record